UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GB CAPITAL HOLDINGS, LLC,<br><br>                                 Plaintiff,<br><br>v.<br><br>S/V GLORI B, a 1977 Sailing Vessel of Approximately 27-Feet in Length, U.S.C.G. Official No. 598405, and all of her engines, tackle, accessories, equipment, furnishings and appurtenances, in rem,<br><br>                                Defendant. | Case No.: 18-cv-0312-WQH-AGS<br><br>**ORDER TO ISSUE VESSEL ARREST WARRANT AND TO APPOINT SUBSTITUTE CUSTODIAN** |

     San Diego Mooring Company supplied the defendant sailboat a berth in San Diego Bay. Under the mooring contract, the vessel must undergo an annual safety inspection. When the sailboat's owner purportedly declined such a safety check, the company ordered him to remove his boat. The owner allegedly refused. San Diego Mooring Company's agent, the plaintiff here, now seeks an arrest warrant for the sailboat and an order appointing a substitute custodian to safeguard the vessel. The Court grants these requests.

1

# BACKGROUND

According to the verified complaint, Jeffrey Heston contracted with San Diego Mooring Company to provide mooring and wharfage services for his sailboat, the Defendant Vessel.[1] Under the contract, Heston's sailboat was required to undergo an annual physical inspection and safety check by certain approved methods, in the company's discretion. Heston allegedly refused the company's preferred method of a U.S. Coast Guard Auxiliary inspection, stating that the Coast Guard was not competent to make seaworthiness determinations and that he was himself "competent to make such determination." (ECF No. 2-1, at 4-5.) As a result, San Diego Mooring Company ordered Heston to remove his sailboat from its mooring, which he purportedly refused to do. Finally, the company impounded the Defendant Vessel and moved it to Pier 32 Marina in National City, California. The company then directed its agent, the plaintiff here, to institute this admiralty action and to seek a Court order to issue a vessel arrest warrant and to appoint a substitute custodian.

# DISCUSSION

## A. Vessel Arrest Warrant

Plaintiff is entitled to an arrest warrant if it has a valid maritime lien on the Defendant Vessel and it meets the requirements for a civil action in rem to enforce that lien.

### 1. *Maritime Lien*

Under the Maritime Lien Act, 46 U.S.C. § 31342, "a person (1) providing necessaries (2) to a vessel (3) on the order of the owner or a person authorized by the owner has a [maritime] necessaries lien on the vessel and may bring a civil action in rem to enforce that lien." *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 305 F.3d 913, 922 (9th Cir. 2002). By the moorage contract's explicit terms, San Diego Mooring Company provided

---

[1] The term "Defendant Vessel" refers to S/V GLORI B, a 1977 sailing vessel of approximately 27 feet in length, U.S.C.G. Official No. 598405, and all of her tackle, accessories, equipment, furnishings, and appurtenances.

the Defendant Vessel wharfage services, which are "'necessaries' within the meaning of maritime law." *Cahuenga Assocs. II v. S/V Mako*, 256 F. Supp. 3d 1092, 1094 (S.D. Cal. 2017) (collecting cases); (*see* ECF No. 1-2, at 1-2). The contract further specifies that the agreement is for "the benefit of the above [Defendant] Vessel" and that the contracting parties are San Diego Mooring Company and Jeffrey Heston, who affirmed that he was the vessel's owner. (ECF No. 1-2, at 2.) So, San Diego Mooring Company provided necessaries to the Defendant Vessel at the owner's request, and the company therefore has the required maritime lien.[2]

### 2. Civil Action in Rem

"An action in rem may be brought . . . . [t]o enforce any maritime lien." Fed. R. Civ. P., Supp. Admiralty Rule C(1)(a). The complaint for such an action must: (1) "be verified," (2) "describe with reasonable particularity the property that is the subject of the action," and (3) "state that the property is within the district or will be within the district while the action is pending." Fed. R. Civ. P., Supp. Admiralty Rule C(2). If after "review[ing] the complaint and any supporting papers," the Court finds that these "conditions for an in rem action appear to exist, the court must issue an order directing the clerk to issue a warrant for the arrest of the vessel or other property that is the subject of the action." Fed. R. Civ. P., Supp. Admiralty Rule C(3)(a)(i). The arrest warrant should issue "upon a prima facie showing that the plaintiff has an action in rem against the defendant . . . and that the property is within the district." Fed. R. Civ. P., Supp. Admiralty Rule C, Advisory Committee Notes to 1985 Amendment.

This Court has reviewed plaintiff's verified complaint and supporting papers, which describe the Defendant Vessel with particularity (*see* note 1, *supra*) and establish that it is currently located within this District at Pier 32 Marina in National City, California. (*See, e.g.*, ECF No. 1, at 1-2, 4-5, 13; ECF No. 1-2, at 3; ECF No. 3-1, at 1.) Because plaintiff

---

[2] Because a maritime necessaries lien clearly exists, the Court need not address plaintiff's argument that it has an additional maritime lien based on a trespass theory.

3

has made a prima facie showing that the conditions for an in rem action exist, the requested vessel arrest warrant must issue.

## B. Substitute Custodian

Plaintiff moves to appoint Pier 32 Marina as substitute custodian to safeguard the sailboat. In conjunction with a vessel arrest warrant, "a judge may order that custody of the vessel be given to the operator of a marina or similar facility . . . if a judge finds that such firm or person can and will safely keep the vessel and has in effect adequate insurance to cover any liability for failure to do so." Civ. LR E.1(c)(2). Jimi Laughery, the Assistant Marina Manager for Pier 32 Marina, has declared under penalty of perjury that he and his staff are "fully qualified to preserve and protect [the Defendant Vessel] and safely keep her in the place and stead of the United States Marshal, until further Order of the Court." (ECF No. 3-1, at 2.) During his eight-and-a-half years at Pier 32, Laughery has deployed dewatering pumps to avoid boat sinkings and has responded to multiple pollution incidents. (*Id.*) If Pier 32 is appointed as substitute custodian, he also promised to inventory and photograph (or videotape) the Defendant Vessel and provide ongoing wharfage and custodial services for the boat. (*Id.*) Finally, he averred that Pier 32 Marina maintains at least three insurance policies to protect against negligence during its custodianship, which are each detailed in his declaration. (*Id.* at 3.) Although the Defendant Vessel has an estimated value of only $3,500, each of Pier 32's insurance policies has a limit of at least $1 million. (ECF No. 2-1, at 6; ECF No. 3-1, at 3.)

Based on these facts, the Court finds that Pier 32 Marina can and will safely keep the Defendant Vessel and currently has adequate insurance to cover its custodian responsibilities.

## **CONCLUSION**

The Court grants plaintiff's ex parte motions for a vessel arrest warrant (ECF No. 2) and for appointment of a substitute custodian (ECF No. 3). The Court orders as follows:

## ARREST WARRANT FOR DEFENDANT VESSEL

1. The Clerk of Court must immediately prepare and issue an Arrest Warrant for the Defendant Vessel, including attaching a copy of this Order to the Arrest Warrant. The Clerk must immediately deliver the Arrest Warrant and attached Order to the United States Marshal for the Southern District of California for service.

2. The U.S. Marshal will ensure that a copy of this Order is attached to and served with the Arrest Warrant for the Defendant Vessel. The Marshal may effectuate service by posting the warrant and a copy of this Order upon the Defendant Vessel and by serving the same on the substitute custodian, Pier 32 Marina.

3. As soon as possible, plaintiff must serve a copy of this Order on the Defendant Vessel's owner (or apparent owner) Jeffrey Heston as well as on all known maritime lien claimants and any others with a known or suspected interest in the Defendant Vessel.

4. Any person claiming an interest in the Defendant Vessel shall be entitled upon request to a prompt hearing at which plaintiff will be required to show why the arrest should not be vacated or other relief granted consistent with the Supplemental Rules for Certain Admiralty and Maritime Claims.

5. Plaintiff must comply with all notice provisions of the Supplemental Admiralty Rules and our Local Rules, including publishing the arrest in the *San Diego Daily Transcript*. *See* Fed. R. Civ. P., Supp. Admiralty Rule C(4); Civ. LR 83.7(a), C.1(b).

## ORDER APPOINTING SUBSTITUTE CUSTODIAN

6. The U.S. Marshal is authorized and directed upon seizure of the Defendant Vessel to surrender the possession of it to the substitute custodian named herein. Upon such surrender, the Marshal will be discharged from the duties and responsibilities for the safekeeping of the Defendant Vessel and held harmless from and against any and all claims whatever arising out of the substituted possession and safekeeping.

7. Pier 32 Marina is appointed the substitute custodian of the Defendant Vessel, to retain her in its custody in her current slip location or another one at the marina, for possession and safekeeping until further Court order.

8. At rates not exceeding the usual and customary rates prevailing in the Port of San Diego, Pier 32 Marina must provide:

    a. <u>Inventory</u>: As soon as possible after assuming custody of the Defendant Vessel, Pier 32 Marina must photograph and/or videotape the Defendant Vessel's interior and exterior and prepare a written inventory of key equipment and property that is not installed as part of the vessel.

    b. <u>Wharfage and Custodial Services</u>: Pier 32 Marina must provide the Defendant Vessel ongoing wharfage and custodial services. The custodial services will include maintenance of the insurance specified in Jimi Laughery's declaration (*see* ECF No. 3-1, at 3) and general custodial services, including: periodic inspection of mooring lines/fenders to assure safe and secure mooring; daily specific visual inspection of the exterior of the vessel for evidence of water intrusion, tampering, or any other problems; interior inspections at least twice monthly; and "walk by" inspections by marina personnel.

    c. <u>Additional Services</u>: Pier 32 Marina will provide the following additional services: cleaning; minor maintenance; inspection of the vessel's bottom by a diver for the purpose of cleaning and reporting findings regarding underwater hull, metal, and zinc conditions; and other services as may be required from time to time by further Court order. If Pier 32 Marina determines that further monitoring or services are necessary, Pier 32 Marina or its counsel must so notify the Court or seek an appropriate Order.

9. Without a Court order, Pier 32 Marina shall not sell or transfer the Defendant Vessel, nor run the Defendant Vessel's engines or generators.

10. Except as directed by this Court or in case of emergency, Pier 32 Marina will not release the Defendant Vessel to anyone or let anyone aboard her.

Dated: April 10, 2018

                                                    Hon. Andrew G. Schopler
                                                  United States Magistrate Judge