UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GB CAPITAL HOLDINGS, LLC, a California Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>S/V GLORI B, a 1977 Sailing Vessel of Approximately 27-Feet in Length, U.S.C.G. Official No. 598405 and All of Her Engines, Tackle Accessories, Furnishings and Appurtenances, in rem,<br><br>Defendant. | Case No.: 18cv312-WQH-AGS<br><br>**ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Order of Sale filed by Plaintiff GB Capital Holdings, LLC. (ECF No. 26).

## I. PROCEDURAL BACKGROUND

On February 2, 2018, Plaintiff GB Capital Holdings, LLC, as the agent of San Diego Mooring Company, initiated this action by filing a verified Complaint. (ECF No. 1). Jeffrey G. Heston, proceeding pro se, filed a Statement of Interested Parties stating "I,

Jeffrey G. Heston, am the sole owner of the Sailing Vessel 'Glori B', document number 598405 and herein-named Defendant in this matter before this Court." (ECF No. 16).

On April 10, 2018, an arrest warrant for the Defendant Vessel was issued, and Pier 32 Marina was appointed as substitute custodian. (ECF No. 6).

On November 29, 2018, the Court denied (ECF No. 25) a motion to dismiss filed by Heston (ECF No. 21).

On December 6, 2018, GB Capital filed an ex parte Motion for Order of Sale, moving the Court to order an interlocutory vessel sale and authorize a credit bid. (ECF No. 26). GB Capital requests that the Court enter an Order directing the United States Marshal to sell the Defendant Vessel at public auction. GB Capital further requests that the Court authorize GB Capital to credit bid an amount up to the lien amount attested to under oath in the verified Complaint ($55,728.51), plus the actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian, and other *custodia legis* expenses, at the auction of the Defendant Vessel.

On December 21, 2018, Heston filed an Answer to the Complaint. (ECF No. 28). The Answer "enters a general denial of lack of jurisdiction and . . . submits an affirmative defense of res judicata to all allegations made in the Complaint." *Id.* at 1. The Answer states that there is no evidence of a maritime lien in this case, and "begs the Court to release the vessel from her bonds, order the Plaintiff to restore her taken value, and return to the contracted status quo prior to the resolution of this controversy." (ECF No. 28).

On December 28, 2018, GB Capital filed a Reply in support of the Motion for Order of Sale, stating that there was no timely response to the Motion for Order of Sale, which the Court should construe as consent to the granting of the motion. (ECF No. 29).

On January 4, 2019, the Court held a hearing on the Motion for Order of Sale. (ECF No. 31).

II. **FACTUAL BACKGROUND**

In the verified Complaint, GB Capital alleges that San Diego Mooring Company (SDMC) supplied the Defendant Vessel, "a 1977 Sailing Vessel of Approximately 27-Feet

2

18cv312-WQH-AGS

in Length, U.S.C.G. Official No. 598405," a berth in San Diego Bay. (ECF No. 1 at 1–2). GB Capital alleges that under the moorage contract, the vessel must undergo an annual safety inspection. *Id.* at 2–3. GB Capital alleges that the owner of the boat, Heston, declined the inspection. *Id.* at 3–4. GB Capital alleges that SDMC ordered Heston to remove the boat, and that Heston refused. *Id.*

GB Capital alleges that the boat was towed to an impound location on March 25, 2016 and has not been retrieved. *Id.* at 4, 8. GB Capital alleges that Heston "has repeated and consistently refused to submit his claims for resolution in binding arbitration," as ordered in the prior litigation. *Id.* at 7–8. GB Capital alleges that Heston has declined GB Capital's repeated offers to waive its claims against Heston and the vessel if Heston "simply retrieves and relocates his vessel." *Id.* GB Capital seeks in rem relief against the vessel for breach of maritime contract, trespass, and quantum meruit. GB Capital alleges damages of $55,728.51 in accrued wharfage fees and other costs as of February 7, 2018. *Id.* at 9.

GB Capital provides the declaration of Ray Jones, President of Long Beach Yacht Sales, stating,

> [I]f [the Defendant Vessel] is permitted to lay idle without routine maintenance and without proper lay-up preparations, the vessel's engines might (even if now operational) rust and freeze up, necessitating costly overhaul. I understand the engines were not, as I believe is usual in vessel arrest cases, conditioned for lay-up. . . . [I]t is unavoidable that the Defendant Vessel will deteriorate in condition and value as she sits idle in salt water, and that the longer the vessel remains under arrest and therefore idle the greater the deterioration will be, and that therefore, in the interest of preserving the value of the Defendant Vessel, she should be sold as soon as possible.

(Decl. of Ray Jones ¶ 3, ECF No. 26-2). The declaration further states that Jones estimates the fair market value of the Defendant Vessel to be approximately $6,000, based on "photographs taken by the Substitute Custodian" after the arrest of the Defendant Vessel, comparisons to other vessels, and "other information and evidence available to [him]." *Id.* ¶ 4. GB Capital submits the declaration of Jimi Laughery, Assistant Marina Manager at

Pier 32 Marina, filed in support of GB Capital's Application for Appointment of Substitute Custodian. (Decl. of Jimi Laughery, ECF No. 3-1). The declaration states that the substitute custodian "provide[s] ongoing wharfage and custodial services at the rate of $3.00 per foot of vessel length per day (i.e., 27 ft. x $3.00 = $81.00 per day)." *Id.* ¶ 4.

## III. THE PRIOR LITIGATION

On April 15, 2016, Heston sued GB Capital under admiralty and maritime jurisdiction to recover possession of the vessel and damages. *Heston v. GB Capital Holdings, LLC*, Civ. No. 16cv912.

On July 1, 2016, GB Capital filed a motion to compel arbitration. Heston did not file a response. On August 23, 2016, the Court ordered arbitration as to the moorage contract.

On September 13, 2016, Heston filed a motion for relief from the Court's August 23, 2016 Order, pursuant to Federal Rule of Civil Procedure 60(b)(1)–(3). On December 15, 2016, the Court denied Heston's motion for relief from judgment.

On October 23, 2017, Heston filed a second motion for relief from the Court's August 23, 2016 Order, on various grounds, including that the "Maritime Contract for Private Wharfage" is not cognizable in admiralty. On January 5, 2018, the Court denied Heston's motion for relief.

On January 26, 2018, Heston filed a notice of appeal. On August 21, 2018, the Court of Appeals for the Ninth Circuit concluded this Court did not abuse discretion by denying relief from the August 23, 2016 Order. On September 4, 2018, Heston filed a petition for panel rehearing and petition for rehearing en banc with the Court of Appeals. On January 3, 2019, the Court of Appeals denied the petition for rehearing en banc.

## IV. DISCUSSION

### A. Interlocutory Sale

GB Capital contends that the Court should authorize sale of the Defendant Vessel on the grounds that the statutory conditions for sale are met. GB Capital asserts that the Defendant Vessel is deteriorating in condition and value while detained in custody. GB

Capital asserts that there is an unreasonable delay in this case because no person or entity has posted or sought to post security for the release of the Defendant Vessel or requested a hearing pursuant to Supplemental Admiralty Rule E(9)(b). GB Capital asserts that that there is no realistic prospect of an attempt to secure release of the vessel in this action. GB Capital asserts that the expense of keeping the Defendant Vessel is excessive and disproportionate because at least $18,792 in substitute custodian fees has accrued, over three times the presumed value of the Defendant Vessel.

The Answer filed by Heston contends that the contract at issue in this case is not a maritime lien, and that jurisdiction does not exist absent evidence of a maritime lien.[1] The Answer asserts that GB Capital has stripped the Defendant Vessel "of any and all of the gear that makes her seaworthy and navigable" and "all the comforts that gave her character and value." (ECF No. 28 at 3). The Answer asserts that GB Capital "has repeatedly refused to honor its obligations," "has evaded every effort to settle this matter equitably," "refuses to mediate, and agrees to arbitrate only after profiting greatly though the unlawful application of brute force and when threaten by legal action." *Id.* at 3–4. The Answer asserts that the issue of whether the Defendant Vessel violated the wharfage contract has only been raised in proceedings before this Court, and "was never raised in a matter consistent with either the (unapproved) mooring contract or Port District procedure." *Id.* at 3. The Answer asserts that "[t]he Defendant has repeatedly demonstrated the willingness to resolve this matter in accordance with the law and the contractual rights of all parties." *Id.* at 3–4. The Answer asserts that "nothing has been decided, yet GB Capital always

---

[1] The Court assesses the Motion for Order of Sale on the merits and does not construe any failure to file a timely response as consent to granting the Motion. *See Narog v. Certegy Check Servs., Inc.*, 759 F. Supp. 2d 1189, 1193 n.1 (N.D. Cal. 2011) (addressing motion to dismiss on the merits "[c]onsidering the Court's obligation to afford pro se plaintiffs the benefit of any doubt" and in light of "the Ninth Circuit's unequivocal pronouncement that a court may not grant a motion for summary judgment merely because the nonmoving party failed to file opposition papers" (first citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985), then citing *Martinez v. Stanford*, 323 F.3d 1178, 1183 (9th Cir. 2003)).

proceeds as if it is already the recipient of a favorable judgment from a competent tribunal." *Id.* at 4.

Supplemental Admiralty and Maritime Claims Rule E(9)(a) of the Federal Rules of Civil Procedure states,

> On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold--with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court--if:
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or disproportionate; or
> (C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Supp. Adm. R. E(9)(a)(i). The applicant is required to satisfy one of the three listed criteria to justify an interlocutory sale. *See, e.g.*, *Cal. Yacht Marina--Chula Vista, LLC v. S/V OPILY*, No. 14-CV-01215-BAS BGS, 2015 WL 1197540, at *2 (S.D. Cal. Mar. 16, 2015) (citing *Merchants Nat. Bank of Mobile v. Dredge Gen. G. L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981)). "The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the in rem process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).

GB Capital has presented evidence that Defendant Vessel was not conditioned for lay-up, "as usual in vessel arrest cases." There are no facts in the record to the contrary. The Court finds the Defendant Vessel is liable to deterioration within the meaning of Supplemental Admiralty Rule E(9)(A)(i)(a). *Compare Cal. Yacht*, 2015 WL 1197540, at *3 (finding defendant vessel liable to deterioration or injury based on expert evidence of possible costly overhaul, and electric equipment susceptibility to corrosion, rust, and general deterioration) (citing *Merchants*, 663 F.2d at 1342 ("The engines were not properly conditioned for lay-up . . . . The court's assessment that each of the vessels was 'liable to deterioration . . . or injury by being detained in custody' was not clearly erroneous.")), *with Vineyard Bank v. M/Y Elizabeth I, U.S.C.G. Official No. 1130283*, No. 08CV2044 BTM

WMC, 2009 WL 799304, at *1 (S.D. Cal. Mar. 23, 2009) (concluding that "a generalized assertion that idle vessels will deteriorate," absent "other evidence that the Defendant Vessel is liable to decay," did not satisfy Rule E(9)(a)(i)).

Courts generally allow at least four months for the provision of a bond to secure the release of a vessel before granting an interlocutory sale on grounds of unreasonable delay. *See Vineyard Bank*, 2009 WL 799304, at *2 (citing *Bank of Rio Vista v. Vessel Captain Pete*, 2004 WL 2330704, at *2 (N.D. Cal. Oct.14, 2004)). In this case, the record shows no attempts to secure the Defendant Vessel after the April 2018 arrest. There are no facts in the record to the contrary. The Court finds an unreasonable delay has occurred within the meaning of Supplemental Admiralty Rule E(9)(A)(i)(c). *See Ferrous*, 567 F. Supp. at 401 (concluding, when defendants had appeared in the action, that no attempt to secure release of vessel within four months since arrest was unreasonable delay); *Merchants*, 663 F.2d at 1341–42 (failing to secure the release of the vessel eight months after arrest is unreasonable delay); *Vineyard Bank*, 2009 WL 799304, at *2 (concluding four-month delay was unreasonable when no person had attempted to secure the release of the vessel).

Maintenance expenses of several thousand dollars per month are excessive and disproportionate when a defendant has made no attempt to secure the vessel's release. In this case, GB Capital has presented evidence $18,792 in accrued fees, which will increase $2,430 each month. GB Capital has presented evidence that the estimated fair market value of the Defendant Vessel is $6,000. There are no facts in the record to the contrary. The Court finds that the accrued costs excessive and disproportionate to the estimated fair market value of the Defendant Vessel. *See Cal. Yacht*, 2015 WL 1197540, at *4 (concluding $6,000 in custodial fees, which would continue accruing, was excessive and disproportionate to the vessel's maximum fair market value of $12,000); *Merchants*, 663 F.2d at 1342 (concluding interlocutory sale justified based on $17,000 in monthly costs and an eight-month delay in attempting to secure release); *Ferrous*, 567 F. Supp. at 401 (concluding $166,000 in annual maintenance costs was excessive when there was no attempt to secure the vessel's release for four months).

Taking into account the disproportionate cost of maintaining the Defendant Vessel, the unreasonable delay in securing its release, and the likelihood of deterioration, the Court finds interlocutory sale warranted under Rule E(9)(a)(i) and grants Plaintiff's motion for interlocutory sale of the Defendant Vessel.

### B. Credit Bid

GB Capital asserts that it is the only party who has asserted a maritime lien claim against the Defendant Vessel, and is by definition senior to all other claims in this action. GB Capital contends that the Court should authorize GB Capital to bid up to the lien amount in the verified Complaint ($55,728.51), plus the actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian, and other *custodia legis* expenses, pursuant to the Local Admiralty rules. GB Capital asserts it will establish the lien amount by affidavit as required by Local Admiralty Rule E.1(e)(2).

As detailed above, the Answer "enters a general denial of lack of jurisdiction, "submits an affirmative defense of res judicata to all allegations made in the Complaint," states that there is no evidence of a maritime lien in this case, and "begs the Court to release the vessel from her bonds, order the Plaintiff to restore her taken value, and return to the contracted status quo prior to the resolution of this controversy." (ECF No. 28 at 1–4).

"When a vessel is sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien or a maritime lien," a "preferred mortgage lien . . . has priority over all claims against the vessel (except for expenses and fees allowed by the court, costs imposed by the court, and preferred maritime liens)." 46 U.S.C. § 31326(a), (b)(1). A preferred maritime lien is defined as "a maritime lien on a vessel[,] (A) arising before a preferred mortgage was filed . . .; (B) for damage arising out of maritime tort; (C) for wages of a stevedore . . . ; (D) for wages of the crew of the vessel; (E) for general average; or (F) for salvage, including contract salvage." § 31301(5). According to the local rules for admiralty actions,

> When the court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that

> plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

S.D. Cal. Civ. R. E.1(e)(2). After process has been executed, parties have fourteen days, or the time allowed by the court, to file a verified statement of right or interest. Fed. R. Civ. P., Supp. Adm. R. C(6)(a).

In this matter, Heston disputes the wharfage contract at issue in this case on multiple grounds. However, Heston provides no evidence that GB Capital does not hold a preferred maritime lien on the Defendant Vessel. Heston does not oppose the request to credit bid. The evidence in the record shows that GB Capital holds a preferred maritime lien on the Defendant Vessel. (Wharfage Contract, Ex. A to Compl., ECF No. 1-2). No party other than GB Capital has asserted a maritime lien claim within the time allowed by Fed. R. Civ. P., Supp. Adm. R. C(6)(a). The Court finds that GB Capital has a preferred maritime lien claim with priority over all other claims against the Defendant Vessel, except for the expenses and fees allowed by the Court and costs imposed by the Court in this action. *See Vineyard Bank*, 2009 WL 799304, at *3. Provided GB Capital complies with Local Rule E.1(e)(1)–(2), the Court grants GB Capital's request to authorize a credit bid up to the amount of secured indebtedness at the sale of the Defendant Vessel. *See id.*; *Bank of Rio Vista*, 2004 WL 2330704, at *2–3 (authorizing credit bid when defendants did not oppose the request to credit bid and argued only that interlocutory vessel sale was premature).

## V. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Order of Sale filed by Plaintiff GB Capital Holdings, LLC (ECF No. 26) is granted.

IT IS FURTHER ORDERED that, consistent with Supplemental Admiralty Rule E(9)(B) and Local Admiralty Rule E.1(e) the United States Marshal be and hereby is directed and empowered to sell said DEFENDANT VESSEL and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the

first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California for at least seven days immediately before the date of sale; and

IT IS FURTHER ORDERED that such public notice specify the date, time and location for the sale of the DEFENDANT VESSEL; and

IT IS FURTHER ORDERED that, consistent with Local Admiralty Rule E.1(e)(2), such public notice specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

IT IS FURTHER ORDERED that any proceeds of said sale shall be held by it or deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court; and

IT IS FURTHER ORDERED that PLAINTIFF, having a secured maritime lien interest in the DEFENDANT VESSEL pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. § 31301, et seq.) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Local Admiralty Rule E.1(e)(2) to credit bid at the auction of the DEFENDANT VESSEL, without payment of cash, a sum equal to its secured interest in the DEFENDANT VESSEL as established by affidavit filed and served on all other parties no later than seven (7) days prior to sale pursuant to Local Admiralty Rule E.1(e)(2), consisting of the lien amounts specified in PLAINTIFF's Verified Complaint, totaling $55,728.51 (calculated through February 7, 2018), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other custodia legis expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order appointing the Substitute Custodian. However, as

1  PLAINTIFF's maritime necessaries lien interest in the DEFENDANT VESSEL does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes;

IT IS FURTHER ORDERED, pursuant to Local Supplemental Admiralty Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase.

Dated: January 22, 2019

Hon. William Q. Hayes
United States District Court